DECISION.
Appellant Keith Walker, Jr., was indicted for two fourth-degree felonies: receiving a stolen car[1] and possession of cocaine.[2]
Having heard sharply divergent testimony at trial about what had actually occurred, the jury took forty-eight minutes to find Walker not guilty of receiving the stolen car, but guilty of possession of cocaine. The trial court sentenced him to eighteen months of incarceration, the maximum prison term for a fourth-degree felony.[3]
 I. No License, But a Car and Drugs
At trial, a police officer testified that his patrol car had been stationary at a cross street when he saw Walker drive through the intersection in a car missing a headlight. He said that he pulled out behind Walker and, without losing visual contact, typed the license number of the car into his in-car system to check the registration. The officer pulled Walker over when the car was identified as having been reported stolen.
The officer approached the car to find Walker, the sole occupant, behind the wheel. When Walker admitted to not having a driver's license, the officer placed him in handcuffs and turned him over to another officer to be searched so that he would be free to confirm that the car had been stolen. The other officer testified that, during the routine search, he found a baggie of what appeared to be cocaine in Walker's pocket. The officers did agree, however, that the car did not appear to have been forcibly entered, and that there was no damage to the steering column to indicate that the car had been started without a key.
According to Walker, the officer had been mistaken when he testified that he had initially seen Walker driving the car. Walker testified that he had arranged a bootleg (illegal) cab ride with a person — whose name he did not know — so that he could go to do his laundry. He claimed that he had no idea that the car in which he was riding had been stolen from an eighty-nine-year-old woman who had left the keys in the car. He further testified that he only ended up behind the wheel of the car because the mysterious driver had jumped out of the moving car when he saw the police following them.
II. Assignments of Error
Walker raises six assignments of error in this appeal. He first argues that his trial counsel was ineffective. According to Walker, his trial counsel demonstrated her ineffectiveness at least in part by failing to object to what Walker argues was prosecutorial misconduct so egregious that it comprises the subject of its very own assignment of error.
Walker's next three assignments of error are argued together. He complains that his conviction was unsupported by sufficient evidence and was against the manifest weight of the evidence, and that consequently the trial court erred by denying his motion for acquittal before the jury even reached the question of his guilt.
Finally, Walker believes that even if his conviction was proper on the evidence, the court erred by imposing the maximum sentence of incarceration. We overrule all six of Walker's assignments of error and affirm the judgment of the court.
III. Counsel Not Ineffective
For Walker to demonstrate that his trial counsel was so ineffective that his constitutional rights were denied, he must point to errors on the part of counsel without which he might reasonably have been acquitted.[4] Our review on appeal of counsel's trial performance must be "highly deferential," and we indulge in "a strong presumption that trial counsel's conduct f[ell] within the wide range of reasonable professional assistance."[5]
Given the testimony in this case, that a jury found Walker not guilty of one of the charges against him is evidence of highly effective trial counsel, not the contrary. But Walker still cites numerous examples from the trial transcript where he finds fault with his attorney's conduct.
We begin by excluding from our consideration the instances that primarily refer to the matter for which Walker was ultimately found not guilty — receiving the stolen car. Even if his trial counsel erred in those instances, Walker was not prejudiced.
Next Walker believes that his trial counsel was ineffective for only asking a few questions of the potential jurors during voir dire. From our reading of the transcript, it appears that those few questions were germane and that counsel made effective use of her peremptory challenges. There is no minimum number of questions an attorney must ask in order to be presumed effective — in federal court, the number is usually zero. But how any of this could have prejudiced Walker is anyone's guess. We do not know, and if Walker's appellate counsel has a theory, he has not shared it with us.
We do not review each of Walker's cited examples in detail. It is sufficient to say that in some cases Walker has cited an apparently technical error. For example, the prosecutor may have asked a question of a witness that had been previously asked and answered. Or the prosecutor may have asked a leading question, and Walker's attorney did not object. It can certainly be appropriate trial strategy not to interpose technical objections on minor matters. In any event, we can discern no prejudice to Walker. In fact, it might have benefited Walker. The jury may have been grateful that the trial testimony was not insipidly interrupted at every opportunity by a hypertechnical attorney. Something benefited Walker — the jury found him not guilty of an offense for which the proof was substantial.
In the remaining two categories of examples, Walker alleges a failure on his attorney's part to attempt to exclude evidence and a failure to object to what he believes was prosecutorial misconduct. We do not need to conjecture, as Walker invites us to do, whether certain evidence should actually have been admitted over an objection. Walker has again failed to demonstrate any resulting prejudice.
IV. No Prosecutorial Misconduct
And as for prosecutorial misconduct that was so egregious that a failure to object constituted ineffective assistance of counsel, there simply was no egregious misconduct. Any alleged misconduct complained of by Walker was so slight that, even if it was misconduct at all, it certainly did not rise to the level of the "egregious" misconduct that Walker indignantly cites.
For example, Walker claims that the prosecutor improperly stated his own personal beliefs when, in closing argument, he told the jury that he would "touch on the elements and point out how I think the things have been proven." Walker believes that the prosecutor should not have said what he thought. This is a technical argument at best. While the prosecutor may not state a personal belief, every time the pronoun "I" is used is not a violation — e.g., "I invite you to consider * * *"; "I appreciate your attention * * *"; "I believe, when all the evidence is in, you will * * *." While a stretch might be made that the prosecutor's statement here was improper, we do not make that stretch. A reasonable jury would not have concluded from the statement that the prosecutor was injecting his personal opinion into the argument.
Walker also complains that the prosecutor improperly vouched for his witnesses during his opening argument. Walker is outraged that the prosecutor told the jury that "I'm convinced that after you hear the two police officers, from the victim of the theft, and from the gentleman from the coroner's lab that you'll be convinced that these are true charges." We can find no fault with the statement, and the remaining examples are no better. We overrule Walker's first two assignments of error.
V. Evidence Enough
Because Walker has chosen to argue his next three assignments of error collectively, we review them collectively, noting where applicable the differences in the analysis.
We cannot say that the evidence against Walker was insufficient if there was substantial evidence, when viewed in a light most favorable to the prosecution, upon which the jury could have relied.[6] By contrast, when we consider a challenge that the verdict was against the manifest weight of the evidence, we weigh the evidence and consider the credibility of the witnesses in determining whether the jury clearly lost its way in resolving conflicts in the evidence and created a manifest miscarriage of justice.[7]
At trial, two police officers testified that they found what appeared to be a baggie of cocaine in Walker's pocket. An employee of the coroner's lab testified that he had performed chemical tests on the contents of the baggie and had confirmed that there was cocaine in it. Walker, on the other hand, testified that both officers had lied and that the cocaine had been found somewhere on the inside of the stolen car.
Thus, if the jury chose to believe the officers, there was substantial evidence upon which to base a conviction. Further, we do not believe that the jury lost its way and created a manifest miscarriage of justice by choosing to believe the officers rather than Walker. We thus overrule Walker's third, fourth and fifth assignments of error.
VI. Sentence Proper
Finally, Walker complains that the trial court committed reversible error by sentencing him to the maximum period of incarceration for a fourth-degree felony. He argues that his eighteen-month jail sentence was too harsh. We have compared the trial court's findings with the record and the applicable sentencing statutes[8] and can discern no error in the court's conclusion that Walker posed the greatest likelihood of committing future crimes. Walker had a lengthy record for a young offender. In fact, he had previously served a prison term and was on parole when this incident occurred. We thus overrule Walker's sixth assignment of error and affirm the trial court's judgment.
Judgment affirmed.
Hildebrandt and Winkler, JJ., concur.
[1] See R.C. 2913.51(A) and (C).
[2] See R.C. 2925.11(A) and (C)(4)(b).
[3] See R.C. 2929.14(A)(4).
[4] See Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052.
[5] Id. at 689, 104 S.Ct. 2052.
[6] See State v. Waddy (1992), 63 Ohio St.3d 424, 588 N.E.2d 819.
[7] See State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541, citing State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[8] See R.C. 2929.14(C), 2929.19(B)(2)(d), and 2929.12(D).